## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 17 2016, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark T. Hager, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | October 17, 2016 <br><br> Court of Appeals Case No. <br> 33A04-1604-CR-759 <br><br> Appeal from the Henry Circuit Court <br><br> The Honorable Bob A. Witham, Judge <br><br> Trial Court Cause No. <br> 33C03-1509-F6-246 |

**Brown, Judge.**

[1] Mark T. Hager appeals his conviction for invasion of privacy as a level 6 felony. Hager raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

*Facts and Procedural History*

[2] On June 8, 2015, the court entered an ex parte order for protection which stated in part that Hager was "prohibited from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with" Brittany Toth. State's Exhibit 1 at 2. The order indicated that it would expire on June 8, 2017. On June 9, 2015, Henry County Sheriff's Special Deputy Bobby Hightower served the protective order to Hager.

[3] On September 8, 2015, while Toth was transferring buses in the area of the New Castle Henry County Public Library, Hager yelled "Red" or "redhead" at her from the top of the steps at the library. Transcript at 25. Bobbi Strange, a library assistant, was taking a break outside the library and heard Hager "hollering for Brittany." *Id.* at 38. Toth went to the bus driver, asked her what she should do, and told her that there was a protective order in place, and the bus driver told her to call the police and said "we'll wait on you." *Id.* at 26. Toth then called the police.

[4] New Castle Police Officer Ty Terrell arrived at the scene and observed that Toth was "visibly shaken" and "appeared to be upset." *Id.* at 44. Toth told Officer Terrell what happened. Shortly after her break, Officer Terrell asked

Strange about the incident, and Strange told him what she saw and identified Hager as the person she saw yelling.

[5] The State charged Hager with invasion of privacy as a class A misdemeanor, enhanced to a level 6 felony. On February 10, 2016, the court held a jury trial. Toth, Strange, Deputy Hightower, and Officer Terrell testified. After the State rested, Hager moved for a directed verdict, and the court denied the motion. Hager testified that he had known Toth for four years, that he was at the library on September 8, 2015, caught a glimpse of Toth, and turned and walked right back in the library without saying anything.

[6] The jury found Hager guilty of invasion of privacy as a class A misdemeanor. Hager then waived a jury trial on the State's request for enhancement, and the court found him guilty on the enhancement.

## Discussion

[7] The issue is whether the evidence is sufficient to sustain Hager's conviction for invasion of privacy. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

[8] The offense of invasion of privacy is governed by Ind. Code § 35-46-1-15.1 which at the time of the offense provided in part that "[a] person who knowingly or intentionally violates . . . an ex parte protective order issued under IC 34-26-5 . . . commits invasion of privacy, a Class A misdemeanor."[1] "However, the offense is a Level 6 felony if the person has a prior unrelated conviction for an offense under this section." Ind. Code § 35-46-1-15.1.

[9] Hager argues that the evidence is insufficient because the contact with Toth was incomplete. He argues that Toth testified that she heard Hager yelling Red or Redhead at her, but he did nothing else before she called the police, and that there is no evidence that he ever actually spoke to her or in any way transmitted information to her. The State argues that the evidence is sufficient as it establishes that Hager deliberately and intentionally yelled at Toth with the intent that she hear him and that she heard him yell at her, became fearful, and called the police.

[10] The record reveals that Toth testified that Hager yelled "Red" or "redhead" at her from the top of the steps at the library while she was transferring buses in the area of the library and that she called the police. Transcript at 25. Strange testified that Hager was "hollering for Brittany." *Id.* at 38. On cross-examination, Strange testified that she was "[v]ery sure" that Hager said "Brittany." *Id.* at 41. Based upon the record, we conclude that evidence of

---

[1] Subsequently amended by Pub. L. No. 65-2016, § 37 (eff. July 1, 2016).

probative value was presented from which the jury could find beyond a reasonable doubt that Hager committed the offense of invasion of privacy.

[11] To the extent Hager relies upon *Huber v. State*, 805 N.E.2d 887 (Ind. Ct. App. 2004), we find that case distinguishable. In *Huber*, Terry Huber and his wife Julie were in the middle of a divorce, and Julie obtained three protective orders against Huber. 805 N.E.2d at 889. The protective orders were issued to restrain Huber from abusing, harassing, or disturbing the peace of Julie, either by direct or indirect contact. *Id.* Huber asked Suzie Ginn, a domestic violence advocate for Putnam County Family Support Services, to call Julie for him to ask why she was doing this to him. *Id.* Ginn told Huber she could not do that. *Id.* On appeal from a conviction for invasion of privacy, we observed that Ginn specifically told Huber that she could not convey the message to Julie. *Id.* at 892. We held that Huber's attempt to contact Julie indirectly through Ginn was incomplete and reversed Huber's conviction for invasion of privacy. *Id.* Unlike in *Huber*, Hager communicated directly to Toth and she heard him and called the police.

## *Conclusion*

[12] For the foregoing reasons, we affirm Hager's conviction.

[13] Affirmed.


Robb, J., and Mathias, J., concur.