## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 03 2019, 7:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shawn Lynn Sills, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | July 3, 2019 <br><br> Court of Appeals Case No. 19A-CR-285 <br><br> Appeal from the Huntington Circuit Court <br><br> The Honorable Davin G. Smith, Judge <br><br> Trial Court Cause No. 35C01-1806-F3-120 |

**Brown, Judge.**

[1] Shawn Lynn Sills appeals his conviction for sexual battery as a level 6 felony. He raises one issue which we restate as whether the evidence is sufficient to sustain the conviction. We affirm.

## Facts and Procedural History

[2] On October 28, 2017, M.S. and her neighbor had alcoholic beverages at M.S.'s apartment, and the neighbor left the apartment about 10:30 p.m. At some point, Sills communicated with M.S., who was his brother's granddaughter, through Facebook Messenger and asked if he could come to her apartment.[1] After Sills arrived at her apartment and while they were at the kitchen table, Sills told M.S. that she looked like one of her aunts and that the aunt "used to let him ejaculate in her panties." Transcript Volume IV at 128. This "made [M.S.] feel horrible inside," and she asked Sills to leave. *Id.* at 129. Sills shoved M.S. into her bedroom, pushed her onto the bed so that she was on her back, took off her pants, and got on top of her. She pushed up on his chest but could not move him. He attempted to place his penis inside her and stated that she "was dry." *Id.* at 129. She told him to stop numerous times. He placed his hand under her shirt and bra, touched her breasts, and kissed her mouth. Sills eventually stopped, used the bathroom, and left. M.S. contacted two friends using Facebook Messenger but they did not immediately respond.

---

[1] M.S. testified that she believed he made the request at midnight or 1:00 a.m. and that she did not remember the exact time he arrived. On cross-examination, she testified that he arrived at her apartment between midnight and 1:00 a.m. and that he had asked to come over a little earlier in the night.

[3] At approximately 8:00 a.m., M.S. saw her neighbor outside of her apartment window, approached him, and told him what had happened. According to the neighbor, M.S. "[d]idn't look like the same young lady," "was distraught, had mascara, looked like she had been crying," "had her hands down like between her crotch," appeared to be in pain, and "was kind of bent over a little bit." *Id.* at 102-103. The neighbor took M.S. to the hospital where she spoke with medical personnel and a detective. A detective collected a pair of blue jeans, a vodka bottle, and patches of the mattress which appeared stained from M.S.'s apartment. M.S. was examined at a sexual assault treatment center, during which she "was anxious [and] shaking" and reported in part that there was "some fondling to her breasts." *Id.* at 235. According to the sexual assault nurse examiner, the examination revealed "two small tears to her right, inner minora," "some bruising to what we call the perihymenal area," and "an abrasion to what we call the fascinovicularus." *Id.* at 236-237. M.S. identified Sills as the person who caused her injuries. Subsequent testing determined that Sills was a likely contributor of DNA found on swabs taken from M.S.'s face, neck, and breasts.

[4] On June 13, 2018, the State charged Sills with rape for causing M.S. to perform or submit to other sexual conduct as a level 3 felony and sexual battery as a level 6 felony, and it later alleged he was an habitual offender. In January 2019, the court held a jury trial at which the State presented the testimony of M.S., her neighbor, the sexual assault nurse examiner, and a forensic biologist with the Indiana State Police Laboratory. M.S. testified in part that Sills "stuck his

fingers inside [her]." *Id*. at 130. The jury found Sills not guilty of rape and guilty of sexual battery, the habitual offender allegation was dismissed, and the court sentenced him to two years and six months incarceration.

## *Discussion*

Sills claims the evidence is insufficient to support his conviction. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

Sills cites the incredible dubiosity rule and argues that, at trial, M.S. testified that her neighbor arrived between 5:00 and 6:00 p.m. and stayed for five to six hours, that her neighbor had provided the alcohol, that she saw a tattoo on Sills's leg, and she could not remember if the light in her bedroom was on or off whereas, during her deposition, she testified that her neighbor arrived between 6:00 and 7:00 p.m. and stayed for one hour, the alcohol belonged to her, she did not see any tattoos on his leg, and the light was on. He also argues that M.S.'s testimony was inconsistent with respect to the time he arrived at her apartment and she could not remember whether he touched one or both breasts or whether her shirt and bra stayed on during the attack. The State maintains the evidence is sufficient to sustain his conviction, M.S.'s testimony was not internally

improbable, and evidence in addition to her testimony supports her account of the attack.

[7] Ind. Code § 35-42-4-8 provides that a person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person, touches another person when that person is compelled to submit to the touching by force or the imminent threat of force commits sexual battery as a level 6 felony. The incredible dubiosity rule applies only in very narrow circumstances. *See Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). The rule is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Id.* (citations omitted).

[8] Sills fails to show that M.S.'s testimony was inherently contradictory or so inherently improbable that no reasonable person could believe it. The witnesses were thoroughly examined and cross-examined, and Sills's defense counsel questioned M.S. regarding the timing of her visit with her neighbor and Sills's arrival at her apartment, who provided the alcoholic beverages, and the extent to which she observed tattoos on Sills. Defense counsel was able to question M.S. regarding her recollection of the details of the assault and any

discrepancies between her trial and deposition testimony. The jury found that Sills committed sexual battery and not rape. In addition to M.S.'s testimony, the State presented the testimony of M.S.'s neighbor, evidence regarding the examination at the sexual assault treatment center, and the testimony of a forensic biologist with the Indiana State Police Laboratory regarding her DNA findings, including her conclusion that Sills was a likely contributor of DNA found on swabs taken from M.S.'s breasts.

[9] Based upon our review of the evidence as set forth above and in the record, we conclude that the State presented evidence of a probative nature from which the jury as trier of fact could find beyond a reasonable doubt that Sills committed sexual battery as a level 6 felony.

[10] For the foregoing reasons, we affirm Sills's conviction.

[11] Affirmed.

May, J., and Mathias, J., concur.